UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLD COAST SEARCH PARTNERS LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CAREER PARTNERS, INC., et al.,<br><br>Defendants. | Case No. 19-cv-03059-EMC<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, AND DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Docket Nos. 9, 30 |

Plaintiffs Gold Coast Search Partners LLC ("Gold Coast"), Anna Brady, and Janelle Matthews (collectively, "Plaintiffs") filed suit seeking declaratory and injunctive relief. Brady and Matthews signed non-compete and non-solicitation covenants in a pre-employment agreement ("Employment Agreement") when they were former employees of Defendants Career Partners, Inc. ("CPI") and Brian O'Callaghan (collectively, "Defendants"). Plaintiffs' complaint seeks a declaratory judgment holding these covenants invalid. Plaintiffs also seek to enjoin Defendants from enforcing the Employment Agreement in an earlier-filed action before a New York state court.

Pending before the Court are two motions: Plaintiffs' preliminary injunction motion ("PI Mot.") and Defendants' motion to dismiss ("MTD"). The Court heard both motions in a consolidated hearing.

Pursuant to the reasons discussed below, Plaintiffs' preliminary injunction motion is **DENIED** because (1) the requested relief would enjoin parallel state proceedings, which violates the Anti-Injunction Act, and (2) the requested relief seeks a prior restraint on speech. Defendants' request to stay this action under the *Colorado River* doctrine is **GRANTED**. As a result, the

1 remainder of Defendants' motion to dismiss is **DENIED** as moot; the denial is without prejudice, should Defendants wish to refile if the stay is lifted.

## I. BACKGROUND FACTS

CPI is a New York corporation engaged in the business of talent recruitment for investment firms. Compl. ¶ 8. CPI's main office is in New York City. MTD at 3. It is in the business of recruiting pre- and post-MBA candidates with CPI's investment-firm clients. *Id*. Brady and Matthews began working as recruiters for CPI in its San Francisco, California office in September 2009 and March 2010, respectively. Compl. ¶ 15. Both separated from CPI in January 2019 to start their own company—Gold Coast, a professional recruiting firm for private equity firms and hedge funds. *Id*. ¶¶ 4, 15; PI Mot. at 6. When Brady and Matthews joined CPI, they signed the Employment Agreement containing the at-issue restrictive covenants. Compl. ¶ 4.

The Employment Agreement's non-compete covenant reads as follows:

> THIRD: Covenant Not to Compete
>
> Candidate agrees that to the extent the Candidate is employed in the New York office, the Candidate agrees not to compete, directly or indirectly, either as principal, manager, agent, consultant, officer, stockholder, partner, investor, lender or employee or in any other capacity, carry on, be engaged in or have any financial interest in, any business or Person which is in competition with the business of CPI within a 250 mile radius of CPI's principal place of business. In view of the services which Candidate will perform and has performed for-' [sic] CPI, which are special, unique, extraordinary and intellectual in character and will place Candidate in a position of confidence and trust with the Customers and other employees of CPI and will provide her with access to Confidential Information of CPI, Candidate expressly acknowledges that the restrictive covenants set forth in this Agreement are necessary in order to protect and maintain the proprietary interests and other legitimate business interests of CPI. Candidate agrees and hereby acknowledges that (i) such provisions do not impose a greater restraint than is necessary to protect the goodwill or other business interests of CPI, (ii) such provisions contain reasonable limitations as to time and scope of activity to be restrained, (iii) such provisions are not harmful to the general public, and (iv) such provisions a.re [sic] not unduly burdensome to Candidate, and the consideration of employment is sufficient to compensate Candidate for the restrictions confined in such provisions. In consideration thereof and in light of Candidate's education, skills and abilities, Candidate agrees that she will not assert in any forum that such provisions prevent Candidate from earning a living or otherwise are void or unenforceable or should be held void or unenforceable. *This provision is not intended to apply to any person primarily employed in the California offices and, to*

> *the extent that this provision is inconsistent with California law, it shall not apply.*

Compl. ¶ 18 (emphasis added). The Employment Agreement also includes the following non-solicitation clause:

> "FOURTH: Non-Solicitation of CPI Customer & Employees
>
> A. CPI Customers—Candidate agrees that he/she shall not, on their own behalf or on behalf of any business or Person other than CPI, directly or indirectly, solicit, call on or contact any Customer, as defined under Article FIRST, for any business purpose or otherwise as contemplated by this Agreement during the term of this Agreement without written permission from CPI. Candidate also agrees that he or she will not provide services to any CPI Customer or accept employment with any CPI Customer without the consent of CPI, which consent will not be unreasonably withheld.
> B. CPI Employees—Candidate agrees that he/she shall not, on their own behalf or on behalf of any business or Person other than CPI, directly or indirectly, solicit or offer employment to, or hire, any individual who has been employed by CPI at any time during the term of this Agreement without written permission from CPI."

Compl. ¶ 19. The Employment Agreement defines "Customers" broadly to include past and present clients of CPI, which further includes the clients' agents and employees. *Id*. at ¶ 20. The Employment Agreement contains a New York choice-of-law provision. *Id*. ¶ 26. Brady and Matthews remained as California residents throughout their employment with CPI. PI Mot. at 3. On occasions during their employment with CPI, Brady and Matthews traveled to and performed services in New York.

After Plaintiffs began operating as Gold Coast, Defendants' counsel sent Plaintiffs correspondence requesting confirmation that Brady and Matthews would comply with the Employment Agreement. *Id*. at 4. Defendants received no response. *Id*. Around the same time, Plaintiffs opened an office in New York City (less than one mile away from CPI). *Id*. at 5. Defendants allege Plaintiffs caused at least one CPI customer to engage Gold Coast rather than CPI. MTD at 4.

Thereafter, Defendants filed suit in New York Supreme Court (the "New York Action") to enforce the restrictive covenants of the Employment Agreement, among other things. *See* Plaintiffs' Request for Judicial Notice ("RJN"), Ex. 1, at 14–22 (Defendants' complaint in New York seeks injunctive relief, breach of contract, theft of compensation, unfair competition, and

3

tortious interference with contract).[1]  Plaintiffs contend that the Employment Agreement's restrictions are unlawful and unenforceable in California.  If enforced, these restrictions would "destroy Gold Coast and would render Ms. Brady and Ms. Matthews unable to conduct their business and work in their chose profession to earn a living."  Compl. ¶ 30.  Plaintiffs also allege that Defendants have disparaged and slandered Gold Coast.  *Id.*

On May 24, 2019, Defendants herein propounded 300 document requests in the New York Action, which requested information related to Plaintiffs' interactions with CPI's clients, among other things.  PI Mot. at 7.  On June 14, 2019, Plaintiffs herein (defendants in the New York Action) filed a motion to dismiss in the New York Action on forum non conveniens grounds, as well as on the merits.  MTD at 4, fn 3.  Plaintiffs have not contested personal jurisdiction in New York.

On July 31, 2019, the parties met for a preliminary conference in the New York Action.  At this conference, the New York Supreme Court stayed the case pending the disposition of the motions before this Court.  The parties also set November 7, 2019, as the hearing date before the New York Supreme Court for the pending motion to dismiss.

## II.      PROCEDURAL BACKGROUND

Defendants' New York Action commenced on April 25, 2019.[2]  Plaintiffs filed this action on June 3, 2019.  Docket No. 1.  On July 13, 2019, Plaintiffs filed their motion for preliminary injunction.  Docket No. 22.  Defendants filed their opposition to Plaintiffs' motion while concurrently filing their motion to dismiss.  Docket Nos. 27, 30.

---

[1] Plaintiffs and Defendants request that the Court take judicial notice of the filings in the New York Action.  The Court **GRANTS** the requests for judicial notice.  The Court may take judicial notice of the state court pleadings.  *See e.g., United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (stating that "we may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"); *see also United States v. Wilson*, 631 F.2d 118 (9th Cir. 1980) (stating that a court may take judicial notice of court records in another case).

[2] Defendants' New York Action is entitled *Career Partners, Inc. v. Anna Brady, Janelle Bains a/k/a/ Janelle Matthews, and Gold Coast Search Partners, LLC d/b/a Gold Coast Search Partners*, bearing index no. 652451-2019.  Plaintiffs' RJN, Ex. 1, at 1.

4

## III. LEGAL STANDARD

A party seeking a preliminary injunction must meet one of two variants of the same standard. Under the original *Winter* standard, a party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). Under the "sliding scale" variant of the *Winter* standard, "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.,* 709 F.3d 1281,1291 (9th Cir. 2013)).

## IV. DISCUSSION

A. <u>Preliminary Injunction Motion</u>

Plaintiffs seek to enjoin Defendants from the following four acts, as pled in their motion:

> (1) engaging in any conduct to interfere with Plaintiffs' business, including threats of legal action pursuant to the void and unenforceable Restrictive Covenant Provisions; (2) falsely stating or claiming that Plaintiffs are prohibited from conducting their business or that they are violating any agreement with CPI; (3) falsely stating or implying that Plaintiffs are bound by the Restrictive Covenant Provisions; and (4) prosecuting their frivolous claims against Plaintiffs in New York.

PI Mot. at 3. Defendants argue that the Anti-Injunction Act ("AIA") prohibits the Court from enjoining the New York Action, and that the requested preliminary injunction is also an improper restraint on speech.

1. <u>Anti-Injunction Act (28 U.S.C. § 2283)</u>

The AIA prevents federal courts from granting "an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state court to proceed in an orderly fashion to finally determine the controversy.

The breadth of the Act's prohibition is broad." *Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286–87 (1970). The threshold question is whether the injunction seeks to stay a state court proceeding. If so, the next question is whether an exception applies. The three exceptions to the AIA are for injunctions that: (1) Congress has expressly authorized; (2) are necessary in aid of the federal court's jurisdiction; or (3) are necessary to protect or effectuate the federal court's judgments. *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 805 (9th Cir. 2002), *as amended on denial of reh'g* (May 15, 2002). These exceptions are narrowly construed. *Atlantic Coast.*, 398 U.S. at 287.

Defendants assert that the preliminary injunction motion, as written, would prevent Defendants from pursuing a parallel state court action because—pursuant to items (1) and (4) in Plaintiffs' requested injunctive relief—it seeks to prevent them from "[e]ngaging in any conduct to interfere with Plaintiffs' business, including threats of legal action" and "[p]rosecuting their claims against Plaintiffs in New York." Despite this, Plaintiffs argue that they are not requesting an order enjoining the New York Action, but, instead, seek an order enjoining the Defendants from enforcing the Employment Agreement against Plaintiffs.

However, Plaintiffs' distinction is without a difference. Enjoining Defendants from enforcing the Employment Agreement in New York, as Plaintiffs request, would have the effect of enjoining a parallel state court action—which the AIA prohibits. *Bennett*, 285 F.3d at 805. ("Ordering the parties not to proceed is tantamount to enjoining the proceedings.") Thus, Plaintiffs' request for preliminary injunction seeks to enjoin a parallel state court proceeding and falls within the ambit of the AIA.

The next inquiry is whether an exception applies. The Ninth Circuit's decision in *Bennett* is instructive of the AIA's application here. In *Bennett*, the Ninth Circuit reversed the lower court's grant of injunctive relief, which enjoined a parallel state court action in Tennessee.[3] There, as here, was a parallel state court action wherein the state-court plaintiffs were attempting to enforce a non-compete and non-solicitation agreement. *Id*. at 803. The Ninth Circuit found no

---

[3] The trial court in *Bennett* granted a temporary restraining order. But the Ninth Circuit concluded that the order was more akin to a preliminary injunction. *Bennett*, 285 F.3d at 804.

6

exception applied to the AIA. *Id*. at 805–06. In so doing, the court found no congressional authorization and no federal judgments were at issue. *Id*. at 806. The only question then was whether an injunction was necessary "in aid of the federal court's jurisdiction[.]" *Id*. The threat posed by a parallel state court proceeding is most prominently "in aid of jurisdiction" when it is for in rem actions or an in personam action that is similar to an in rem action. *Id*. at 807 (citing *Alpine Land & Reservoir*, 174 F.3d 1007, 1013–14 (9th Cir. 1999) [water rights sufficiently similar to in rem actions]). The *Bennett* court held that the injunction was not "necessary" in the aid of federal jurisdiction for the employees' personal rights because to hold otherwise would eliminate parallel or related federal and state proceedings. *Id*. at 807.

At the hearing, counsel for Plaintiffs were unable to address how or why the AIA does not apply. Because the rights Plaintiffs are seeking to enforce are in personam (*i.e.*, a judgment can be enforceable against them wherever they are), their request for a preliminary injunction to enjoin the New York Action violates the AIA, and no exception applies. *See Bennett*, 285 F.3d at 805 ("injunctions are permitted where an in personam action bears substantial similarity to an in rem action."). Accordingly, the requested relief in Plaintiffs' preliminary injunction motion that would effectively enjoin the New York Action is **DENIED**. In so holding, the Court does not make any findings under *Winter*.

2. Prior Restraint on Speech

The remaining requested relief is problematic for a different reason. Plaintiffs also seek to enjoin Defendants from (1) stating or claiming that Plaintiffs are prohibited from conducting their business or that they are violating any agreement with Defendants; and (2) stating or implying that Plaintiffs are bound by the Employment Agreement. Defendants contend this request is an improper prior restraint on speech.

Plaintiffs allege the speech is directed towards recruiting candidates—*i.e.*, clients targeted by both Gold Coast and CPI. Because Plaintiffs seek to enjoin Defendants' speech before it occurs, the requested preliminary injunction functions as a prior restraint. *See Allen v. Ghoulish Gallery*, 2007 WL 1555739 *2 (S.D. Cal. May 23, 2007) (citing *Smith v. Daily Mail Publishing Co.*, 433 U.S. 97, 103 (1979) ("An injunction enjoining speech and expression is an example of a

7

prior restraint on speech."). Prior restraints are presumptively unconstitutional. *See Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) ("Any prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity.") (citations omitted). Though the Supreme Court has never held that prior restraints are always unconstitutional as a matter of law, *see Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 71 (1963), only in "exceptional cases" may courts permit this "extraordinary remed[y]." *CBS Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (citing *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 562 (1975)). Plaintiff has not established a sufficiently compelling justification for the prior restraint on speech sought herein. Since even potential danger to national security has been held insufficient to override prior restraint, Defendants' disparaging comments to potential Gold Coast clients likely do not pass muster. While the Court recognizes and is sympathetic to the unique nature of Plaintiffs' business profession, which could be threatened by the alleged slander, the Court has an obligation to delicately balance such interests with the constitutional right to free speech. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 570 (1976) ("the guarantees of freedom of expression are not an absolute prohibition under all circumstances, but the barriers to prior restraint remain high and the presumption against its use continues intact.").

To be sure, commercial speech receives less protection under the First Amendment than non-commercial speech. *Allen*, WL 1555739, at *3 (citing *U.S. v. Edge Broadcasting Co.*, 509 U.S. 418, 426 (1993). But even commercial speech enjoys protection against prior restraints. *See*, *e.g.*, *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1071, 1088 (C.D. Cal. 2003) (preliminary injunction is not available for enjoining libelous statements, even for commercial speech and even where the false statements would likely cause injury to business or property.).

It is true that the "First Amendment offers no protection for false or deceptive commercial speech." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 563 (1980). However, truthful commercial speech does enjoy meaningful First Amendment protection. *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978); *Bd. of Trustees of State Univ. of New York v. Fox,* 492 U.S. 469, 478 (1989). A preliminary injunction is not ideal for resolving the actual truth or falsity of Defendants' speech, particularly where the merits of the matter is already

8

pending in another court.

Here, there are additional reasons that counsel against this Court issuing the injunction against speech sought by Plaintiffs. The content that Plaintiffs seek to censor concerns a publicly-filed lawsuit, the details of which are already made available to the public. An injunction from this Court would ostensibly function as a gag order issued by another court. The New York Supreme Court is better situated to address whether a prior restraint on speech is appropriate because it is intertwined with the litigation, which will require analyzing the truth of the speech Plaintiffs seek to restrain through their pending motion to dismiss. Accordingly, the remainder of their preliminary injunction motion is **DENIED**.

B. Motion to Dismiss

Defendants' motion makes five requests. According to Defendants, the Court (1) should dismiss or stay this action under the *Colorado River*; (2) stay this action pursuant to its inherent powers under *Landis*; (3) dismiss the claim for injunctive relief; (4) dismiss the claim for declaratory relief; and/or (5) dismiss Defendant O'Callaghan entirely. As stated at the outset of this order, the Court will stay this action, thereby rendering the remainder of Defendants' motion moot.

Under *Colorado River*, a district court may decline to "exercise federal jurisdiction, in deference to pending, parallel state proceedings" when such a decision is justified by considerations "of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1165–66 (9th Cir. 2017). In exceptional circumstances, a federal court may decline to exercise federal jurisdiction where "the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.* at 813.

The Ninth Circuit has articulated a balancing test that considers the following eight factors:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings

9

will resolve all issues before the federal court.

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978 (9th Cir. 2011). However, these factors should not be evaluated as a "mechanical checklist" and "[a]ny doubt as to whether a factor exists should be resolved against a stay or dismissal." *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017).

Defendants argue that the balance of factors under *Colorado River* weigh in favor of staying the instant action. Plaintiffs contend that abstention under *Colorado River* is only appropriate under exceptional circumstances, which are not present here. But Plaintiffs also acknowledge that a stay (instead of a dismissal) would ensure that the federal forum will remain open if the state forum proves to be inadequate. The following factors favor a stay.

### 1. Jurisdiction Over Property at Stake and Federal or State Law Deciding the Merits

The parties are in accord that no property is at stake. The parties also agree that federal law does not provide the rule of decision on the merits because state law governs whether the Employment Agreement is enforceable. These factors are either neutral or weigh in favor of a stay in this Court. *Cf. R.R. St. & Co. Inc.*, 656 F.3d at 980.

### 2. Convenience of Federal Forum

Defendants concede that the Court is not an inconvenient form (nor is it the more convenient or only forum), so the factor is neutral. Plaintiffs argue that, under California law, it is the forum in which this lawsuit must be adjudicated because of California Labor Code section 925, which prohibits an employer from requiring its employees to sign a forum-selection or choice-of-law clause as a condition of employment. *See* Cal. Labor Code § 925(a)(1)–(2). Defendants dispute that Section 925 applies. Section 925 applies only to contracts entered, modified, or extended on or after January 1, 2017. Cal. Lab. Code § 925(f). Plaintiffs signed their contracts in 2010 but argue that there were modifications to their bonus structure after 2017. During the hearing, however, Plaintiffs' counsel were unable to persuade the Court as to why the New York Supreme Court cannot or should not resolve this issue.

### 3. Avoiding Piecemeal Litigation

Defendants believe this factor is the most important because it would avoid duplicative

10

discovery, since both actions involve the enforceability of the Employment Agreement and discovery taken in one action certainly will be relevant to the other. It is indisputable that there is a threat of piecemeal litigation here—both actions require interpretation of the Employment Agreement and the litigation of the gateway issues of whether to apply California or New York law. The threat of piecemeal litigation is therefore significant enough to warrant weighing this factor in favor of a stay.

### 4. Priority of Proceedings

The Ninth Circuit considers two factors: (1) the filing dates and (2) the progress of both cases. *R.R. St. & Co. Inc.*, 656 F.3d at 980. The New York Action commenced first; but the parties dispute how far it has progressed to date. To Defendants, the New York Action is further along because Plaintiffs fully briefed their motion to dismiss and responded (by objection) to their discovery requests. Plaintiffs concede that discovery in the New York Action is ongoing and that their motion to dismiss is fully briefed and set for hearing. The parties met on July 31, 2019 for a preliminary conference, under New York Uniform Civil Rules, and set the motion for oral argument on November 7, 2019. The progression of the New York Action favors a stay.

### 5. Prevent Forum Shopping

Here, each party accuses the other of forum shopping. The Ninth Circuit has affirmed a stay under the *Colorado River* doctrine "when it was readily apparent that the federal plaintiff was engaged in forum shopping." *R.R. St. & Co. Inc.*, 656 F.3d at 981. Neither of the parties here appear guilty of bad faith forum shopping. Both filed lawsuits in the forum in which they believed was more opportunistic. The Ninth Circuit has not classified these actions as forum shopping. *See R.R. St. & Co. Inc.*, 656 F.3d at 981. This is a neutral factor.

### 6. Adequacy of State Court

Under *Colorado* River, this factor requires the Court to consider "whether the state court proceedings can adequately protect the rights of the federal litigants[.]" *Seneca Ins. Co., Inc.*, 862 F.3d at 845. This factor "pertains to whether there is an impediment to the state court protecting the litigants' federal rights . . . ." *Id.* Defendants make a strong showing that a New York court can adequately apply California law, when necessary. And, as discussed *supra*, the Court is not

11

persuaded that the New York Supreme Court is inadequately equipped to interpret and/or apply California law.

### 7. State Court's Ability to Resolve All Issues Before the Federal Court

As with the adequacy of the state court, Defendants convincingly show that the New York Action can resolve all the issues before this Court. The case at bar and the New York Action are substantially similar and parallel: both involve the same dispute over the Employment Agreement, and both will require an analysis of New York or California law. As such, despite the *Colorado River* doctrine's high bar, most factors here weigh in favor of a stay (with the remaining factors weighing neutrally). This matter is not one in which federal law plays a role, and whichever court litigates this case will inevitably look to choice-of-law and contract law, both of which are state law determinations.

During the hearing, the parties informed the Court that the oral argument on Plaintiffs' (plaintiffs herein; defendants therein) motion to dismiss in the New York Action is set for hearing on November 7, 2019, despite neither party seeking an earlier date. Yet, Plaintiffs came to the hearing with a high level of urgency and requested an injunction at least as to the duration of the "peak recruiting season," which began as early as the filing of this action and is expected to continue until mid- to late-September.[4] Plaintiffs represented that they have not presented the same exigency to the New York Supreme Court, and defense counsel relatedly represented that they would not oppose an expedited hearing in New York on this basis.

Accordingly, a stay is appropriate because of the foregoing factors so providing and because the very issues before the Court now are teed up for resolution in the New York Supreme Court on November 7, 2019—if not earlier. Defendants' request for a stay of this proceeding is therefore **GRANTED**. The remaining requests in Defendants' motion are **DENIED without prejudice**. Defendants may refile their motion to dismiss if this stay is lifted.[5]

---

[4] Plaintiffs also proposed an expedited summary judgment motion. But the Court declined to entertain such a proposal, as the urgency (*i.e.*, the peak recruiting season) that gives rise to the need for an accelerated motion would have expired by the time the parties submit their briefs.

[5] Plaintiffs requested permission from the Court to file a renewed preliminary injunction motion or an *ex parte* application for a temporary restraining order at a later juncture. The Court declined

12

1 The parties are ordered to report for a status conference specially set for November 27, 2019, at 9:30 a.m. Both parties are permitted to appear telephonically.

This order disposes of Docket Nos. 9 and 30.

**IT IS SO ORDERED**.

Dated: September 11, 2019

_____
EDWARD M. CHEN
United States District Judge

---

further motions for injunctive relief. Relief can be sought from the New York court.